UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GS HOLISTIC, LLC,

Plaintiff,

-v-

CIVIL ACTION NO. 25 Civ. 4770 (JAV) (SLC)

**REPORT AND RECOMMENDATION**

AMAZING STORE & SMOKE SHOP INC. d/b/a
AMAZING STORE & SMOKE SHOP, et al.,

Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE JEANNETE A. VARGAS**, United States District Judge:

## I. INTRODUCTION

Plaintiff GS Holistic, LLC ("Plaintiff") sues, under 15 U.S.C. § 1051, et seq., (the "Lanham Act") for trademark infringement, counterfeiting, and false designation of origin and unfair competition claims (the "Trademark Claims"), Defendants Amazing Store & Smoke Shop Inc. d/b/a Amazing Store & Smoke Shop (the "Store"), Mohammad Salim Sheikh ("Mohammad"), and Saleha Dadabhai Sheikh ("Saleha") (together, "Defendants") arising out of Defendants' sale of counterfeit products that infringe on Plaintiff's nine federally registered "G PEN" trademarks identified by U.S. Trademark Registration Numbers 4,390,645, 5,368,594, 4,470,963, 4,616,071, 4,466,586, 5,264,986, 5,264,988, 5,405,360, and 5,405,361 (the "G PEN Trademarks"). (See Dkt. No. 15 (the "Amended Complaint")). On December 5, 2025, after Defendants failed to answer and defend in this action, the Clerk of Court entered Certificates of Default against each of them. (Dkt. Nos. 46–48 (the "CoDs")).

Before the Court is Plaintiff's motion for default judgment against Defendants, (Dkt. Nos. 49–51; 54 (the "Motion")), which the Honorable Jeannette A. Vargas has referred to the undersigned, along with an inquest on damages.  (Dkt. No. 55).

For the reasons set forth below, we respectfully recommend that the Motion be **GRANTED IN PART** and **DENIED IN PART** and that Plaintiff be awarded:  (i) $50,000.00 in statutory damages for each of the nine G PEN Trademarks, for a total of $450,000.00; (ii) costs in the amount of $440.00; (iii) post-judgment interest pursuant to 28 U.S.C. § 1961; and (iv) injunctive relief as set forth in § III.E, infra.

## II.BACKGROUND

Given Defendants' default, we accept as true all well-pleaded factual allegations in the Amended Complaint, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("it is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[1]

### A.  Factual Background

Plaintiff is a Delaware limited liability corporation, with a principal office in California, that markets and sells vaporization products, including a line of "portable vaporizers and accessories" branded with Plaintiff's G PEN Trademarks (the "GS Products").  (Dkt. Nos. 15 ¶¶ 8, 12, 16; 15-

---

[1] Internal citations and quotations are omitted from case citations unless otherwise indicated.

2).[2]  Since 2012, Plaintiff has marketed and sold the GS Products, which are recognized nationally and internationally, and in 2016, it obtained all the rights associated with the G PEN Trademarks.  (Id. at ¶¶ 11–12).  Plaintiff sells the GS Products under the G PEN Trademarks in over 5,000 authorized stores in the United States.  (Id. at ¶ 21).  The GS Products sell at prices ranging "from $70 to $250, while a non-G PEN branded product of equivalent size and technology will usually sell for $11 to $20."  (Id. ¶¶ 18, 21–22).  Plaintiff has "spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion."  (Id. ¶ 18, 21–22).

Defendants operate the Store, a retail smoke shop in New York City, at which they sell counterfeit or imitation vape products bearing marks "identical" or "substantially indistinguishable" from the G PEN Trademarks (the "Counterfeit Products").  (Dkt. No. 15 ¶¶ 23–24, 27–29, 31–32, 36, 68).  Plaintiff became aware of the Counterfeit Products when its

---

[2] In the Motion, Plaintiff argues that Defendants infringed on Plaintiff's four "Stüdenglass" trademarks identified by U.S. Trademark Registration Numbers 6,633,884, 6,174,292, 6,174,291, and 7,028,399 (the "Stüdenglass Trademarks") and attaches copies of the Stüdenglass Trademark registrations to its attorney declaration in support of the Motion.  (Dkt. Nos. 51 at 3; 51-1).  In the Amended Complaint, however, Plaintiff only alleges that Defendants infringed on the G PEN Trademarks, not the Stüdenglass Trademarks.  (Dkt. Nos. 15; 15-1; 15-2).  Further, review of Plaintiff's investigative photos of the Counterfeit Products, which Plaintiff attached to both the Amended Complaint and the Motion, shows that the Counterfeit Products visibly bear the G PEN Trademarks, not the Stüdenglass Trademarks.  (Dkt. Nos. 15-3; 51-2 (the "Investigative Photos")).  The Court thus declines to consider the Stüdenglass Trademarks in connection with the Motion because Plaintiff did not "integrally rely" on them in the Amended Complaint, but instead only relied on the G PEN Trademarks.  Xiamen ITG Grp. Corp., Ltd. v. Peace Bird Trading Corp., No. 19 Civ. 6524 (DLI) (ST), 2024 WL 5399245, at *1 n.3 (E.D.N.Y. Aug. 30, 2024) (on motion for default judgment considering materials on which the pleadings relied).  In addition, Plaintiff may only "obtain from a default judgment equivalent relief to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."  Xiamen, 2024 WL 5399245, at *9 (citing Henry v. Oluwole, 108 4th 45, 55 (2d Cir. 2024)).  We therefore limit our analysis to Plaintiff's claims that Defendants infringed the G PEN Trademarks.  (See Dkt. No. 15).

investigator visited the Store on December 18, 2023 and "observed that [the Store] had four (4) vaporizers which appeared to display each of the [G PEN Trademarks]" and purchased one of them. (Id. ¶¶ 34–35; Dkt. No. 15-3). Plaintiff alleges that these Counterfeit Products are manufactured using "inferior or different materials[,]" "mislead consumers[,]" and "take a free ride on the goodwill of the G PEN brand." (Dkt. No. 15 ¶¶ 23–24, 44, 72). Plaintiff further alleges that Defendants' conduct is "willful" and has resulted in "confusion[,]" "lost sales and damages to [Plaintiff] and irreparable harm to the G PEN brand's image." (Id. ¶ 24, 40–42, 46, 48–51, 55, 60–62, 64, 69, 71).

### B. Procedural Background

On June 5, 2025, Plaintiff commenced this action by filing a complaint against Mohammad and the Store. (Dkt. No. 1 (the "Complaint")). On July 25, 2025, Plaintiff served the summons and Complaint on Mohammad and the Store, making August 15, 2025 their deadline to respond to the Complaint. (Dkt. Nos. 11–12). See Fed. R. Civ. P. 12(a)(1)(A)(i). On August 21, 2025, Mohammad and the Store having not responded to the Complaint, Plaintiff filed the Amended Complaint, which added Saleha as a Defendant. (Dkt. No. 15). On August 25, 2026, although Plaintiff's deadline to amend as of right had passed, see Fed. R. Civ. P. 15(a), given that the only amendment was to add Saleha as a defendant and that Mohammad and the Store still had not responded to the Complaint, the Court designated the Amended Complaint as the operative pleading. (Dkt. No. 18). The Court further ordered Plaintiff to serve Defendants with the Amended Complaint and reminded Defendants that they were required to respond to the Amended Complaint within 21 days of service. (Id. at 3). Plaintiff served the Amended Complaint on Saleha on August 29, 2025, the Store on September 25, 2025, and Mohammad on September

4

29, 2025, making their deadlines to respond September 19, 2025, October 16, 2025, and October 20, 2025, respectively.  (Dkt. Nos. 22–24).  See Fed. R. Civ. P. 12(a)(1)(A)(i).

On September 23, 2025, Saleha having not responded to the Amended Complaint, the Court sua sponte extended her deadline to October 13, 2025 and warned her that failure to timely respond "may result in the Court permitting Plaintiff to initiate default proceedings against [her]."  (Dkt. No. 21).  On October 21, 2025, Defendants still having not responded to the Amended Complaint, the Court again sua sponte extended their deadlines to November 4, 2025, and again warned Defendants that failure to timely respond "may result in the Court permitting Plaintiff to initiate default proceedings against Defendants."  (Dkt. No. 25).

On November 5, 2025, Defendants still having not responded to the Amended Complaint, the Court ordered Plaintiff to request certificates of default from the Clerk of Court and to file a motion for default judgment.  (Dkt. No. 32 at 2).  On December 5, 2025, the Clerk of Court entered the CoDs against Defendants, (Dkt. Nos. 46–48), and on December 15, 2025, Plaintiff filed the Motion, along with a memorandum of law, a supporting affirmation, and exhibits (the "Damages Submission").  (Dkt. Nos. 49–52; 54).  Plaintiff also filed proof of service of the Motion and Damages Submissions on Defendants, indicating that Plaintiff mailed copies to Defendants on December 8, 2025.  (Dkt. No. 53).

On January 12, 2026, the Court ordered Defendants to respond to the Damages Submission by January 26, 2026, and warned Defendants that "if [they] fail to respond to Plaintiff's Damages Submission, or (2) fail to contact [the undersigned's] chambers by January 26, 2026 and request an in-court hearing, [the undersigned] intend[s] to issue a report a recommendation concerning damages based on Plaintiff's Damages Submission[] alone without

5

an in-court hearing." (Dkt. No. 56 (the "Inquest Order")). The Court further ordered Plaintiff to serve the Inquest Order on Defendants and file proof of service by January 19, 2026. (Id.) After a sua sponte extension of Plaintiff's deadline to file proof of service of the Inquest Order on Defendants, (Dkt. No. 57), Plaintiff filed proof of service of the Inquest Order, confirming that Plaintiff mailed the Inquest Order to Mohammed and the Store, but not Saleha. (Dkt. No. 58).[3] To date, Defendants have not responded to the Motion or the Damages Submission, nor have they requested an in-court hearing.

### III. DISCUSSION

#### A. Jurisdiction

As a threshold matter, the Court has federal subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C § 1331 because Plaintiff sued under a federal statute, the Lanham Act, 15 U.S.C. §§ 1051 et seq. See 28 U.S.C § 1331.

With respect to personal jurisdiction over Defendants, Plaintiff alleges that the Store is a corporation organized in, existing under the laws of, and with a principal place of business in New York, and that Mohammed and Saleha are both domiciled in New York. (Dkt. No. 15 at ¶¶ 5–7). Plaintiff further alleges that "Defendants have extensive contacts with this judicial district relating to [Plaintiff's] claims" given their "regular and systematic business transactions in this

---

[3] Although Plaintiff did not serve the Inquest Order on Saleha, Plaintiff successfully served Saleha with the summons, Amended Complaint, Motion, and Damages Submissions. (Dkt. Nos. 22; 53). Consistent with the court's analysis in Moskovitz v. La Suisse, a defaulting party need not "actually receive the papers in support of the motion for a default judgment," and where the defaulting party was served with process but never appeared, "the Federal Rules don't require that a default judgment [motion] be served on him at all." No. 06 Civ. 4404 (CM), 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013). Here, Plaintiff served Saleha with the summons and Amended Complaint, along with the Motion and Damages Submissions, so Saleha, despite having not been served with the Inquest Order, had sufficient notice of the potential for a default judgment in this case.

judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of [Plaintiff]."  (Id. ¶ 3).

As stated above, (see § II, supra), given that we accept as true all well-pleaded factual allegations in the Amended Complaint, except as to damages, we accept that the Store is a corporation organized in, existing under the laws of, and with a principal place of business in New York; that Mohammed and Saleha are both domiciled in New York; and that Defendants regularly conduct business in this judicial district.  (Id. at ¶¶ 5–7).  Accordingly, given that the Store is "at home" in New York, and that Mohammed and Saleha are domiciled in New York, the Court has general personal jurisdiction over Defendants.  Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 343 n.8 (S.D.N.Y. 2015) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."); Arzu v. Am. Airlines, Inc., 690 F. Supp. 3d 242, 247–48 (S.D.N.Y. 2023) (explaining that "a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation  or  its principal  place  of  business.") (citing Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014)).

**B.  Default Judgment**

In the Motion, Plaintiff seeks a default judgment against Defendants.  (Dkt. No. 49–51).  For the reasons set forth below, we find that entry of a default judgment against Defendants is proper and respectfully recommend that the Court enter a default judgment.

### 1. **Legal Standard**

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55. See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015) (per curiam). First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default. See Fed. R. Civ. P. 55(a). Second, after entry of default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment. See Fed. R. Civ. P. 55(b). Whether to enter a default judgment lies in the "sound discretion" of the trial court. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other." Lopez v. Emerald Staffing, Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *4 (S.D.N.Y. Feb. 26, 2020).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the

8

factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action.").

### 2. Application

In accordance with the two-step process in Rule 55, the Clerk of the Court entered the CoDs against Defendants, (Dkt. Nos. 46–48), and they have failed to appear, defend against Plaintiff's claims, respond to the Damages Submission, request an in-court hearing, or otherwise challenge the default in any way. (See Dkt. Nos. 21; 25; 32; 56–58). Considering the relevant factors set forth above, the Court first finds, based on Defendants' failure to respond to the Amended Complaint, Motion, or the Damages Submission, or otherwise appear in this action, that Defendants' default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct"). Second, delaying entry of a default judgment might prejudice Plaintiff, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06 Civ. 14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), adopted by, 2009 U.S. Dist. LEXIS 6074 (S.D.N.Y. Jan. 26, 2009). Third, Defendants have failed to respond to the Court's orders to appear and defend in this action. (Dkt. Nos. 21; 25; 57; 58).

Accordingly, because the requirements of Rule 55 are satisfied and the relevant factors weigh in Plaintiff's favor, we find that entry of a default judgment against Defendants is appropriate and respectfully recommend that the Court enter a default judgment.

### C. Liability

We turn next to whether Plaintiff has alleged sufficient facts to establish, for the purposes of a default judgment, Defendants' liability for the Trademark Claims. (Dkt. No. 15 at 16–22). The Lanham Act imposes civil liability on any person who "reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark" without the consent of the registrant and applies the reproduced or counterfeited mark to goods offered for sale in a way that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). We find that based on Plaintiff's allegations in the Amended Complaint, Plaintiff has sufficiently alleged facts showing Defendants' liability for the Trademark Claims. (See Dkt. No. 15).

### 1. Legal Standard

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Ent., Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds the well-pleaded allegations establish liability, the Court analyzes "whether [the] [p]laintiff has provided adequate support for the relief it seeks." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). "If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, even if the post-default inquest submissions supply the missing information." Lopez, 2020 WL 915821, at *4.

10

In evaluating whether Plaintiff has established Defendants' liability for the purposes of a default judgment, the Court must "ask whether the allegedly infringed mark 'is entitled to protection' and, if so, 'whether use of the allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of the products to which it is attached.'" Mattel, Inc. v. 1622758984, No. 18 Civ. 8821 (AJN), 2020 WL 2832812, at *3 (S.D.N.Y. May 31, 2020) (quoting Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 168 (2d Cir. 2016)).  With respect to the first element, "[a] certificate of registration with the [Patent and Trademark Office] is [prima facie] evidence that the mark is registered and valid . . ., that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999) (citing 15 U.S.C. § 1115(a)).  For the second element, consumer confusion, courts in this Circuit recognize that "counterfeits, by their very nature, cause confusion."  Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (quoting Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003)).

### 2.  Application

Both elements are met here.  Plaintiff owns and possesses certificates of trademark registration for the nine G PEN Trademarks, copies of which are exhibits to the Amended Complaint. (Dkt. Nos. 12 ¶¶ 11–13; 15-2).[4]  Plaintiff's allegation that the Counterfeit Products

---

[4] Plaintiff alleges that it owns the registration for all nine G PEN Trademarks but only attaches copies of the certificates of registration for seven G PEN Trademarks.  (Dkt. Nos. 15 at 11–13; 15-2; 15-1).  Three of the seven are registered under Plaintiff's name — 5,405,360, 5,368,594, and 5,405,361 — while the other four — 4,390,645, 4,470,963, 4,616,071, 4,466,586 — were originally registered by Grenco Science, Inc. and later assigned to Plaintiff.  (Dkt. No. 15-1).  As for the two G PEN Trademarks for which Plaintiff does not attach a certificate of trademark registration — 5,264,986, 5,264,988 — given that we accept as true all well-pleaded factual allegations in the Amended Complaint, except as to damages, see Mickalis

are "almost identical" to the GS Products and display "identical, or nearly identical" versions of the G PEN Trademarks on them, (Dkt. No. 15 ¶¶ 23, 31, 32, 36, 42, 53, 59, 68), is "sufficient to support the conclusion that the marks deployed by [] Defendants are counterfeits," and therefore both elements are met.  Mattel, Inc. v. 1622758984, 2020 WL 2832812, at *3 (granting default judgment on, among other claims, trademark counterfeiting and infringement claims under the Lanham Act) (citing Montres Rolex, S.A. v. Snyder, 718 F.2d 524, 531–32 (2d Cir. 1983)).

### D. **Damages**

In the Amended Complaint, Plaintiff sought statutory damages under the Lanham Act, attorneys' fees and costs, disgorgement of profits, treble damages, prejudgment and post-judgment interest, and injunctive relief.  (See Dkt. No. 15).  In the Motion, however, Plaintiff seeks statutory damages pursuant to the Lanham Act, post-judgment interest, costs, and injunctive relief, but does not seek attorneys' fees, disgorgement of profits, treble damages, or prejudgment interest.  (Dkt. Nos. 50 at 20; 51 at 3; 54).  Accordingly, we limit our assessment below to only those categories of damages that Plaintiff seeks in the Motion.

### 1. **Legal Standard**

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Getty Images (US) Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 411 (S.D.N.Y. 2011) (citing Credit Lyonnais Sec. (USA) v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages."

---

Pawn Shop, LLC, 645 F.3d at 137, we accept as true that Plaintiff owns the registration for all nine G PEN Trademarks.

Lopez, 2020 WL 915821, at *5.  The evidence the plaintiff submits must be admissible.  See House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence"); Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018).  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment.").

### 2. Application

In the Motion, Plaintiff seeks $200,000.00 in statutory damages, post-judgment interest, and costs.  (Dkt. No. 50).  We separately analyze each category of damages.

### a. Statutory Damages

Section 1117(c) of the Lanham Act provides that a prevailing plaintiff may recover statutory damages in the amount of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just[.]" Otter Prods., LLC v. 4PX Express USA Inc., No. 23 Civ. 11111 (PMH), 2025 WL 2144780, at *2 (S.D.N.Y. July 29, 2025) (citing 15 U.S.C. § 1117(c)(1)–(2)).  "Congress added the statutory damages provision of the Lanham Act in 1995 because counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept, making proving actual damages in these cases

extremely difficult if not impossible." Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d at 520 (citation modified).

If the infringement is willful, "the court may award up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." Otter Prods., 2025 WL 2144780, at *2 (citing 15 U.S.C. § 1117(c)(1)–(2)). The standard for willfulness "is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded the possibility." Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993). "Willfulness may be inferred when the products in question are clearly counterfeit." Moose Toys Ltd, v. Baby&Mommy K-ingdom Toy Store, No. 21 Civ. 2370 (GBD) (OTW), 2025 WL 3204418, at *3 (S.D.N.Y. Nov. 13, 2025).

A court may also deem a defendant's infringement willful by virtue of its default. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [defendant's] infringement is deemed willful, and therefore the Court has discretion to award anywhere between $500 and $1,000,000 per counterfeit mark per type of good sold."); Otter Prods., 2025 WL 2144780, at *3 ("By virtue of its default, Defendant is a willful infringer."). In addition, where the products in question are clearly counterfeit, as is the case here as shown in the Investigative Photos, (Dkt. Nos. 15-3; 51-2), willfulness can be inferred. See Moose Toys, 2025 WL 3204418, at *3; Coach, Inc. v. Melendez, No. 10 Civ. 6178 (BSJ) (HBP), 2011 WL 4542971, at *5 (S.D.N.Y. Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the [plaintiff's] [r]egistered [t]rademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional."), adopted by, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011). Accordingly, given Defendants' default and the counterfeit nature of

the Counterfeit Products on their face, we find that Defendants' infringement was willful and statutory damages are appropriate under the Lanham Act.

As stated above, (see n.2, supra), in the Motion, Plaintiff seeks $200,000.00 in statutory damages pursuant to the Lanham Act based on Defendants' infringement of the four Stüdenglass Trademarks — $50,000.00 per Stüdenglass Trademark. (Dkt. No. 50 at 16–17). In the Amended Complaint, however, Plaintiff does not mention the Stüdenglass Trademarks but instead alleges that Defendants infringed on the nine G PEN Trademarks. (Dkt. No. 15 at 12; 35; 15-1; see n.2, supra). Accordingly, we find that Plaintiff is not entitled to statutory damages for Defendants' alleged infringement of the four Stüdenglass Trademarks and instead analyze Plaintiff's entitlement to statutory damages for Defendants' infringement of the nine G PEN Trademarks. (See Dkt. No. 15). See All-Star Mktg. Grp., LLC v. Media Brands Co., 775 F. Supp. 2d 613, 620 (S.D.N.Y. 2010) (awarding statutory trademark infringement damages of $50,000.00 only for each of the eight infringed trademarks alleged in complaint).

When determining appropriate statutory damages under the Lanham Act, courts consider seven factors:

> (1) expenses saved and profits reaped by the infringer/defendant; (2) the plaintiff's lost revenues; (3) the value of the trademark; (4) the need to deter other potential infringers; (5) whether the defendant's conduct was innocent or willful; (6) the cooperativeness of the defendant in providing records relevant to profits and losses; and (7) the need to deter the defendant from future misconduct.

Otter Prods., 2025 WL 2144780, at *3.

Regarding the first, second, and sixth factors, Defendants have not appeared, answered, or otherwise responded to the Amended Complaint, despite having been properly served. (See Dkt. Nos. 15; 21; 22–24; 25; 32). These failures prevent us from determining Defendants' saved

15

expenses and profits, or calculating Plaintiff's lost revenues, due to the infringing conduct, meaning that the first and second factors are neutral, but the sixth factor — concerning Defendants' cooperation in providing records relevant to profits and losses — weighs in favor of Plaintiff receiving a substantial statutory damages award.  See Otter Prods., 2025 WL 2144780, at *3 ("The sixth factor also weighs in favor of a substantial award of damages, as Defendant has not provided any records relevant to its profits and losses that would have aided in the calculation of damages").

The third factor — the value of the trademark — also weighs in favor of Plaintiff.  Plaintiff has established that the G PEN Trademarks are valuable, given that "5,000 authorized stores in the United States sell[] the [GS Products][,]" the GS Products "range[] in price from $70 to $250, while a non-G PEN branded product of equivalent size and technology will usually sell for $11 to $20[,]" and that Plaintiff has "spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion." (Dkt. No. 15 ¶ 18, 21–22).

The fifth factor also weighs in favor of Plaintiff because, as established above, (see § III.D.2.a, supra), Defendants' infringement was willful.

Factors four and seven — deterrence — also weigh in favor of Plaintiff receiving a substantial statutory damages award.   "The need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity . . . ."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *5 (S.D.N.Y. Feb. 17, 2016).  "In addition, the [] Defendants' willful misconduct and failure to appear

16

in this litigation merit a finding that 'a slight damage award is unlikely to deter them from continuing their illegal business.'" Qlay Co. v. Adajay, No. 20 Civ. 9776 (JGK) (SDA), 2021 WL 6065800, at *6 (S.D.N.Y. July 30, 2021), adopted in relevant part by, 2021 WL 6064404 (S.D.N.Y. Dec. 21, 2021).  Here, we find that the willful conduct of Defendants in infringing the G PEN Trademarks merits a substantial damages award that will deter both Defendants and other potential infringers.

Accordingly, we find that Plaintiff is entitled to $50,000.00 in statutory damages for each of the nine G PEN Trademarks that Defendants willfully infringed, totaling $450,000.00.  See Ontel Prods. Corp. v. Airbrushpainting Makeup Store, No. 17 Civ. 871 (KBF), 2017 U.S. Dist. LEXIS 221489, at *3–4 (S.D.N.Y. June 29, 2017) ("Courts in this [C]ircuit have frequently awarded statutory damages in the range of $20,000[.00] to $50,000[.00] per willfully infringed mark in cases where defendants failed to appear and the Court has limited information as to the scope or circumstances of defendants' infringement.") (collecting cases); All-Star Mktg. Grp., 775 F. Supp. 2d at 620 (awarding $50,000.00 in statutory damages for each of the eight infringed trademarks, totaling $400,000.00); see also Mattel, Inc. v. www.power-wheels-outlet.com, No. Civ. 8108 (PAE) (GWG), 2022 WL 2900763, at *2 (S.D.N.Y. July 22, 2022) (emphasizing district courts' "wide discretion in awarding statutory damages"); 15 U.S.C. § 1117(c).

For the foregoing reasons, and because it would serve both the compensatory and punitive purposes of the Lanham Act's prohibitions on willful infringement, we respectfully recommend that Plaintiff be awarded statutory damages of $50,000.00 for each of the nine G PEN Trademarks, totaling $450,000.00.

17

### b. Costs

Plaintiff also seeks to recover the "costs of the action," including: (i) the $405.00 filing fee; (ii) the $227.42 service fees; and (iii) $427.99 for "investigative fees[,]" for a total of $1,060.41. (Dkt. No. 50 at 17).  As for the filing fee, although Plaintiff does not submit a receipt substantiating that cost, "the Court may [] take judicial notice of the filing fees reflected on the docket as support for an award of those costs."  (Dkt. No. 1).  Inga v. Nesama Food Corp, No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *15 (S.D.N.Y. July 30, 2021) (collecting cases).  Accordingly, we respectfully recommend that Plaintiff be awarded the $405.00 filing fee.

As for the $227.42 service fees, however, Plaintiff does not attach any supporting documentation in support of that cost.  See J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp., No. 17 Civ. 5355 (JGK) (DF), 2018 WL 5018065, at *7 (S.D.N.Y. Sept. 20, 2018) (recommending denial of request for service fees that lacked documentary support).  Accordingly, we respectfully recommend that the Court deny Plaintiff's request for the $227.42 service fees.

As for Plaintiff's request for $427.99 in "investigative fees[,]" Plaintiff's documentation only supports a portion of this cost.  (Dkt. No. 50 at 17).  In support of this cost, Plaintiff submits an "Investigation Worksheet[,]" in which Plaintiff's investigator, Bryan Malamut ("Mr. Malamut"), summarized his visit to the Store on December 18, 2023, explaining that he purchased one of the Counterfeit Products and attaching one receipt for the cost of the Counterfeit Product — $35.00.  (Dkt. No. 51-6; see Dkt. No. 15-3).  The Investigative Worksheet, however, does not provide a receipt or invoice for Mr. Malamut's investigative services, or otherwise explain why Plaintiff's "investigative fees" total $427.99.  (Dkt. No. 51-6; see Dkt. No. 15-3).  Accordingly, with respect to "investigative fees[,]" we respectfully recommend

18

that Plaintiff only be awarded the $35.00 for the cost of purchasing the Counterfeit Product. (Dkt. No. 50 at 17).  See Sanchez v. Jyp Foods Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (noting that adequate substantiation is required for an award of costs).

### c.  Post-Judgment Interest

Plaintiff also seeks "post-judgment interest" calculated pursuant to 28 U.S.C. § 1961. (Dkt. No. 50 at 17).  28 U.S.C. § 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961.  The Second Circuit has explained that an award of post-judgment interest is mandatory.  See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) ("Because we have consistently held that an award of post-judgment interest is mandatory, the district court erred in not including interest at the statutory rate."); Suriel v. Cruz, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *17 (S.D.N.Y. Jan. 10, 2022) (awarding post-judgment interest).  Given the mandatory nature of post-judgment interest, we respectfully recommend that Plaintiff be awarded post-judgment interest consistent with 28 U.S.C. § 1961.

\*                              \*                              \*

In sum, the Court recommends that Plaintiff be awarded: (i) $50,000.00 in statutory damages for each of the nine G PEN Trademarks, for a total of $450,000.00; (ii) costs in the amount of $440.00, representing the $405.00 filing fee and $35.00 cost of purchasing the Counterfeit Product; and (iii) post-judgment interest pursuant to 28 U.S.C. § 1961.

### E. <u>Injunctive Relief</u>

Plaintiff also requests in the Motion that the Court (i) permanently enjoin Defendants from continued infringement of the Stüdenglass Trademarks, and (ii) order the destruction of the products bearing the Stüdenglass Trademarks pursuant to 15 U.S.C. § 1118.  (Dkt. No. 50 at 18–20).   As stated above, however, Plaintiff does not allege that Defendants infringed the Stüdenglass Trademarks, nor does Plaintiff even mention the Stüdenglass Trademarks, in the Amended Complaint.  (See n.2, supra; § III.D.2.a, supra).  Accordingly, we limit our assessment below to Plaintiff's requested injunctive relief in the Amended Complaint concerning Defendants' infringement of the G PEN Trademarks.  (See Dkt. No. 15).

Specifically, in the Amended Complaint, Plaintiff seeks an order (i) "permanently enjoying [the Store] and its agents, employees, officers, directors, owners, representative, successor companies, related companies, and all persons acting in concert or participation with it from [] [t]he import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit G PEN product identified in the [Amended] Complaint and any other unauthorized G PEN product, counterfeit, copy or colorful imitation thereof[,]" and (ii) "requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G PEN Trademarks."  (Dkt. No. 15 at 20–22 ¶ 4, 8).

We analyze each requested injunctive relief separately.

20

### 1. **Permanent Injunction**

The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116.

To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156–57 (2010).

"In a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." Sub-Zero, Inc. v. Sub Zero Refrigeration & Appliances Servs., Inc., No. 13 Civ. 2548 (KMW) (JLC), 2014 WL 1303434, at *6 (S.D.N.Y. Apr. 1, 2014) (citation modified). For the reasons discussed above, (see § III.C supra), Plaintiff has sufficiently alleged facts showing a likelihood of consumer confusion with respect to Defendants' infringement of the G PEN Trademarks and therefore has also established irreparable injury.

Legal remedies are inadequate to protect Plaintiff "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable," U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc., 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013), and the Court "may infer from [Defendants'] default that [they are] willing to, or may continue [their] infringement." Pearson Educ., Inc. v. Vergara, No. 09 Civ. 6832 (JGK) (KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010).

21

The balance of hardships also favors Plaintiff.  Plaintiff has been using the G PEN Trademarks since 2016, has "approximately 5,000 authorized stores in the United States selling the [GS Products][,]" with prices ranging "from $70 to $250, while a non-G PEN branded product of equivalent size and technology will usually sell for $11 to $20."  (Dkt. No. 15 ¶¶ 18, 21–22).  Since 2016, Plaintiff has worked to build "significant goodwill" in the G PEN Trademarks and has "spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion."  (Id. ¶ 18).  The likelihood of consumer confusion and potential loss of goodwill and reputation could cause significant harm to Plaintiff.  (See id. ¶¶ 40, 47, 48, 64, 72, 17).  In contrast, by defaulting in this case, Defendants have failed to allege any hardship.  Moreover, "[i]n cases in which courts have found that infringement occurred, courts have essentially argued that the only hardship to the defendant from the injunction would be to prevent the defendant from engaging in further illegal activity."  Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp., 954 F. Supp. 2d 145, 163–64 (E.D.N.Y. 2013).  Thus, the balance of hardships weighs in favor of Plaintiff.

There is also no indication that the public interest would be disserved by the permanent injunction requested by Plaintiff.  On the contrary, public interest would be served by the permanent injunction because "[t]he consuming public has a protectable interest in being free from confusion, deception, and mistake[,]" and Plaintiff has sufficiently alleged facts showing likelihood of confusion, (see § III.C, supra).  Sub-Zero, 2014 WL 1303434, at *7; see Stark Carpet, 954 F. Supp. 2d at 163–64 ("Anti-infringement injunctions serve the public interest by preventing consumer confusion and allowing a more efficient marketplace to operate by virtue

22

of the availability to consumers of a clear identification of products, services and vendors."). Accordingly, Plaintiff has met this element as well.

Because Plaintiff has met each element, we respectfully recommend that the Court enter a permanent injunction permanently enjoying the Store and its agents, employees, officers, directors, owners, representative, successor companies, related companies, and all persons acting in concert or participation with it from the import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit G PEN product identified in the Amended Complaint and any other unauthorized G PEN product, counterfeit, copy or colorful imitation thereof. (Dkt. No. 15 at 20–21 ¶ 4).

### 2.   Delivery and Destruction

"Under the Lanham Act, where a trademark violation has been established, a court may order infringing material be 'delivered up and destroyed.'" John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 639 (S.D.N.Y. 2018) (quoting 15 U.S.C. § 1118).

Given Defendants' failure to appear in this action, we find that destruction of the products that infringe on the G PEN Trademarks, including the Counterfeit Products, under 15 U.S.C. § 1118 is appropriate. See Sub-Zero, 2014 WL 1303434, at *7; see also U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc., No. 12 Civ. 8753 (JGK) (GWG), 2013 WL 5363777, at *6 (S.D.N.Y. Sept. 26, 2013) (noting that "there is no reason to believe that a permanent injunction in this case would render a destruction order unnecessary

in light of [defendant's] complete failure to participate in this litigation"), adopted by, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013).

Accordingly, we respectfully recommend that the Court require Defendants and all others acting under the Defendants' authority, at their cost, to deliver to Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G PEN Trademarks without Plaintiff's authorization.  (Dkt. No. 15 at 21–22 ¶ 8).  See Fendi S.a.s. Di Paola Fendi E Sorelle v. Cosm. World, Ltd., 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986) (explaining that, under 15 U.S.C. § 1118, courts "may order the actual goods, as well as the infringing marks, destroyed.").

### IV. CONCLUSION

For the reasons set forth above, we respectfully recommend that the Motion be **GRANTED IN PART** and **DENIED IN PART** and that Plaintiff be awarded:  (i) $50,000.00 in statutory damages for each of the nine G PEN Trademarks, for a total of $450,000.00; (ii) costs in the amount of $440.00; (iii) post-judgment interest pursuant to 28 U.S.C. § 1961; and (iv) injunctive relief as follows:

1) An order permanently enjoying the Store and its agents, employees, officers, directors, owners, representative, successor companies, related companies, and all persons acting in concert or participation with it from the import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit G PEN

24

product identified in the Amended Complaint and any other unauthorized G PEN product, counterfeit, copy or colorful imitation thereof; and

2) An order requiring Defendants and all others acting under the Defendants' authority, at their cost, to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G PEN Trademarks without Plaintiff's authorization.

Plaintiff shall serve a copy of this Report and Recommendation on Defendants and file proof of service by **May 13, 2026**.

Dated:       New York, New York
             May 6, 2026

                                  SO ORDERED.

                                  _____
                                  SARAH L. CAVE
                                  **United States Magistrate Judge**

                *                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with

25

the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Vargas.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).